UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| MARATHON PETROLEUM CORPORATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARATHON PETROLEUM COMPANY LP, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 2

III.    DEFINITIONS .................................................................................................... 2

IV.     PARTIES BOUND ............................................................................................. 4

V.      CIVIL PENALTY ............................................................................................... 7

VI.     MITIGATION PROJECTS ................................................................................ 8

VII.    REPORTING/COMPLIANCE REQUIREMENTS ........................................ 13

VIII.   STIPULATED PENALTIES ............................................................................ 14

IX.     FORCE MAJEURE .......................................................................................... 18

X.      DISPUTE RESOLUTION ............................................................................... 21

XI.     INFORMATION COLLECTION AND RETENTION OF RECORDS .......... 23

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................ 25

XIII.   COSTS .............................................................................................................. 27

XIV.    NOTICES .......................................................................................................... 27

XV.     EFFECTIVE DATE .......................................................................................... 28

XVI.    RETENTION OF JURISDICTION .................................................................. 29

XVII.   MODIFICATION .............................................................................................. 29

XVIII.  TERMINATION ............................................................................................... 29

XIX.    PUBLIC PARTICIPATION ............................................................................. 30

XX.     SIGNATORIES/SERVICE .............................................................................. 31

XXI.    INTEGRATION ............................................................................................... 31

XXII.   FINAL JUDGMENT ........................................................................................ 32

XXIII.  APPENDICES .................................................................................................. 32

## I.    INTRODUCTION

WHEREAS, Plaintiff, United States of America ("United States" or "Plaintiff"), on behalf of the United States Environmental Protection Agency ("the EPA"), has filed a Complaint for civil penalties and other relief against Marathon Petroleum Corporation and Marathon Petroleum Company LP (the "Defendants") under the Clean Air Act ("CAA" or "Act"), Title II, Sections 205(b) and 211(d), as amended, 42 U.S.C. §§ 7524(b) and 7545(d), for alleged violations of Sections 211(a), (b), (c), (f), (h), and (k) of the CAA, 42 U.S.C. §§ 7545(a), (b), (c), (f), (h), and (k), and the regulations promulgated thereunder and published at 40 C.F.R. Parts 79 and 80;

WHEREAS, the EPA discovered the alleged violations pled in the Complaint during inspections of Defendants' refineries in 2008 and 2009 and from information self-disclosed by the Defendants.

WHEREAS, the United States asserts that Defendants are liable for civil penalties and other relief for all violations alleged in its Complaint;

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest; and

WHEREAS, without a trial regarding any issue of fact or law, the Parties agree to entry of this Decree.

1

NOW, THEREFORE, before the taking of any testimony and with consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and CAA Sections 205(b) and 211(d)(2), 42 U.S.C. §§ 7524(b) and 7545(d)(2). The Parties agree that this Court has personal jurisdiction over them. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), 1395(a), and Section 205(b) of the Act, 42 U.S.C. § 7524(b), since the Defendants reside and do business in this judicial district.

2. Solely for purposes of this Consent Decree, Defendants waive any defenses they might have as to jurisdiction and venue, and, without admitting or denying the factual allegations contained in the Complaint, consent to the terms of this Decree. In any action to enforce this Decree, Defendants accept the Court's jurisdiction over this Decree and consent to venue in this District.

3. To facilitate a resolution, Defendants waive service of the Complaint and summons in this matter pursuant to Fed. R. Civ. P. 4(d).

4. Solely for purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to CAA Sections 211(a), (b), (c), (d), (f), (h), and (k) of the CAA, 42 U.S.C. §§ 7545(a), (b), (c), (d), (f), (h), and (k), and the regulations published at 40 C.F.R. Parts 79 and 80.

## III. DEFINITIONS

5. Terms used in this Decree that are defined in the CAA or in regulations promulgated under the CAA shall have the meanings assigned to them in the Act or such regulations, unless

2

otherwise provided in this Decree.  Whenever the terms set forth below are used in this Decree, the following definitions shall apply:

a.  **"Act"** or **"CAA"** means the Clean Air Act, as amended, 42 U.S.C. §§ 7401 et seq.;

b.  **"Complaint"** shall mean the Complaint filed by the United States in this action;

c.  **"Completion Date(s)"** shall mean the dates stated in Appendix A, Mitigation Projects, Tables A-1 and A-2;

d.  **"Consent Decree"** or **"Decree"** means this Consent Decree;

e.  **"Covered Facilities"** shall mean the Catlettsburg Refinery, Hammond, Indiana Terminal, Louisville-Algonquin Terminal, Columbus Terminal, Speedway Terminal, Lima Terminal, Griffith, Indiana Terminal, and Lima Crude Tank Farm;

f.  **"Date of Lodging of the Consent Decree"** shall mean the date the signed Decree is filed with the Court;

g.  **"Day"** shall mean a calendar day.  In computing any period of time under this Decree, where the last day would fall on a Saturday, Sunday, or Federal Holiday, the period shall run until the close of business of the next working day;

h.  **"Defendants"** shall mean Marathon Petroleum Corporation and Marathon Petroleum Company LP;

i.  **"Effective Date"** shall have the definition provided in Section XV (Effective Date);

j.     "**EPA**" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

k.     "**Interest**" means interest at the rate specified for debts owed to departments or agencies of the United States pursuant to 28 U.S.C. § 1961;

l.     "**Force Majeure**" shall have the meaning set forth in Paragraph 48 of this Decree;

m.     "**Paragraph**" means a portion of this Decree identified by an Arabic numeral ("subparagraph" by letter);

n.     "**Parties**" means the United States, Marathon Petroleum Corporation, and Marathon Petroleum Company LP.  Each of the foregoing entities shall be a "Party";

o.     "**Section**" shall mean a portion of this Decree identified by a roman numeral; and

p.     "**United States**" shall mean the United States of America, acting on behalf of the EPA.

## IV.    PARTIES BOUND

6.    This Decree applies to and is binding upon the United States and Defendants, and any of Defendants' successors and assigns, or other entities or persons otherwise bound by law.

7.    Defendants shall give written notice of, and shall provide a copy of, the Decree to any transferee(s) or successor(s) in interest (hereafter, collectively "transferee(s)") at least sixty (60) Days prior to the transfer of interest ownership, or operation of any portion of the Covered Facilities.  Defendants shall notify the United States in accordance with the notice provisions in Section XIV (Notices) of any successor(s) in interest at least thirty (30) Days prior to any such transfer.

8.     If Defendants intend to request that the United States agree to a transferee's assumption of any obligations of this Decree, Defendants shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest in the Covered Facilities upon the transferee's written agreement to execute a modification to this Decree that shall make the terms and conditions of the Decree applicable to the transferee.

9.     As soon as possible prior to the transfer: (i) Defendants shall notify the United States of the proposed transfer and of the specific obligations in the Decree that Defendants propose the transferee assume for a transferred facility; (ii) Defendants shall certify that the transferee is contractually bound by the Defendants to assume the Defendants' obligations and liabilities under this Decree; and (iii) the transferee shall submit to the United States a certification that the transferee has the financial and technical ability to assume the Defendants' obligations and liabilities under this Decree and a certification that the transferee is contractually bound by the Defendants to assume the Defendants' obligations and liabilities under this Decree.  Should the Defendants fail to comply with any provisions (i) or (ii) of this Paragraph, or should the transferee fail to comply with the provisions of (iii) of this Paragraph, the Defendants shall remain responsible for the performance of all obligations and liabilities under this Decree.

10.     After submission to the United States of the notice and certifications, either:  (i) the United States shall notify Defendants that the United States does not agree to modify the Decree to make the transferee responsible for complying with the terms and conditions of the Decree; or (ii) the United States, Defendants, and the transferee shall file with the Court a joint motion requesting the Court approve a modification substituting the transferee as a defendant responsible for complying with the terms and conditions of the Decree.

11.    If Defendants do not secure the agreement of the United States to a joint motion within a reasonable period of time, then Defendants and the transferee may file, without the agreement of the United States, a motion requesting the Court to approve a modification substituting the transferee for the Defendant(s) responsible for complying with some or all of the terms and conditions of the Decree. The United States may file an opposition to the motion. The motion to modify shall be granted unless Defendants and the transferee: (i) fail to show that the transferee has the financial and technical ability to assume the obligations and liabilities of the Decree; (ii) fail to show that the modification language effectively transfers the obligations and liabilities to the transferee; or (iii) the Court finds other good cause for denying the motion.

12.    Except as provided in Paragraphs 7-11 and Section IX (Force Majeure) of this Decree, Defendants shall be responsible for ensuring that the performance of the obligations of this Decree are undertaken in accordance with the deadlines and requirements contained in this Decree and any attachments hereto. Defendants shall provide a copy of all applicable portions of this Decree to all officers and employees whose duties might reasonably include compliance with any provision of this Decree. No later than the execution of any contract with a consulting or contracting firm that is retained to perform work required by this Decree, Defendants shall provide a copy of the applicable provisions of this Decree to each such consulting or contracting firm. Defendants shall condition any such contract upon performance of the work in conformity with the applicable terms of this Decree. No later than thirty (30) Days after the Date of Lodging of the Decree, Defendants also shall provide a copy of the applicable provisions of this Decree to each consulting or contracting firm that Defendants already have retained to perform the work required by this Decree. Copies of the applicable provisions of the Decree do not need to be

6

supplied to firms who are retained to supply materials or equipment to satisfy requirements of this Decree.

13.    In any action to enforce this Decree, Defendants shall not assert as a defense the failure by any of their officers, employees, agents, or contractors, to take any actions necessary to comply with the provisions of this Decree, unless Defendants establishes that such failure resulted from a Force Majeure event as that term is defined in Paragraph 48 (Section IX) of this Decree.

## V.    CIVIL PENALTY

14.    By no later than thirty (30) Days after the Effective Date of this Decree, the Defendants shall pay to the United States the total sum of $2,900,000.00 as a civil penalty.

15.    Defendants shall pay the civil penalty by FedWire Electronics Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following the Effective Date, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Ohio, United States Court House, 801 West Superior Avenue, Suite 400, Cleveland, Ohio, 44113-1852, phone (216) 622-3600.  At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter stating that the payment is for the civil penalty owed pursuant to the Decree in United States v. Marathon Petroleum Corporation, et al., and referencing the civil action number and DOJ case number 90-5-2-1-11030, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.cinwd@epa.gov; and by mail to:

EPA Cincinnati Finance Office

26 Martin Luther King Drive

Cincinnati, Ohio 45268

7

16.    If any portion of the civil penalty due to the United States is not paid within the time specified in Paragraph 14, above, Defendants shall pay Interest on the amount past due, accruing from the date payment was due.  Interest payment under this Paragraph shall be in addition to any stipulated penalty due.

17.    Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## VI.    MITIGATION PROJECTS

A.    Retirement of Sulfur Credits.

18.    With the submission of the March 31, 2015 Gasoline Sulfur Credit Banking and Allotment Generation Report ("GSF0100") to the EPA's Office of Transportation and Air Quality ("OTAQ") for 2014, Defendants shall retire 5,500,000,000 parts per million ("ppm") gallons of Tier II 2012 sulfur credits beyond what is required for annual compliance from the Catlettsburg Refinery (4268-08166).  Defendants shall submit the GSF0100 report for 2014 to the United States as specified in Section XIV of this Decree (Notices) within fourteen (14) Days of the date that the report is submitted to OTAQ together with a cover letter that identifies the number of sulfur credits it is retiring and the facility that generated the sulfur credits, along with a statement that it is retiring the sulfur credits pursuant to its obligations under this Decree.

B.    Installation of Geodesic Domes, Fixed Roofs, or Secondary Seals and Deck Fittings.

19.    Defendants shall install, maintain, and operate geodesic domes on five (5) gasoline tanks (Tank numbers 120-4, 120-6, 80-5, 80-9 and 80-12) located at Defendants' Griffith, Indiana Light Products Terminal.  Additionally, Defendants shall install, maintain, and operate secondary seals and deck fittings on two (2) of its terminal gasoline tanks (Tank numbers 80-8 and 80-15)

8

located at Defendants' Hammond, Indiana Light Products Terminal.  The foregoing actions shall be implemented in accordance with the requirements of Appendix A ("Mitigation Projects") to this Decree and shall be installed, inspected, and fully operational by no later than the Completion Dates provided in Appendix A.  Defendants estimate that the foregoing projects will achieve a total reduction of volatile organic compound ("VOC") emissions of not less than 17.7 tons per year as determined by the TankESP version 3.0.14 program.  As described in Section IV of Appendix A, the Defendants shall use good faith efforts to secure the estimated emissions reductions identified in Appendix A for the projects identified in this Paragraph.

20.    Defendants shall install, maintain, and operate geodesic domes on two (2) gasoline tanks (Tank numbers 1217 and 1218) located at Defendants' Lima, Ohio Light Products Terminal. Defendants shall install, maintain, and operate secondary seals and deck fittings on the following five (5) terminal gasoline tanks: Tank 162, Louisville, Kentucky – Algonquin Terminal; Tank 80-9 (T009), Columbus, Ohio; Tank 80-8 (T005), Lima, Ohio; Tank 80-14, Speedway, Indiana; and Tank 80-6, Hammond, Indiana.  The foregoing actions shall be implemented in accordance with the requirements of Appendix A to this Decree and shall be installed, inspected, and fully operational by no later than the Completion Dates provided in Appendix A.  Defendants estimate that the foregoing projects will achieve a total reduction of VOC emissions of not less than 20.72 tons per year as determined by the TankESP version 3.0.14 program.  As described in Section IV of Appendix A, the Defendants shall use good faith efforts to secure the estimated emissions reductions identified in Appendix A for the projects identified in this Paragraph.

C.    Alternative Projects.

9

21. Should Defendants determine that it would prefer to install domes, fixed roofs, secondary seals or deck fittings on tanks other than those identified in Paragraphs 19 and 20, Defendants shall inform the EPA of its determination pursuant to Section XIV of this Decree (Notices). The foregoing notice shall: (a) include the Defendants' proposal to install geodesic domes, fixed roofs, or secondary seals and deck fittings on alternate tank(s) within the same market area; (b) demonstrate that, as determined by the TankESP version 3.0.14 program, the alternative project will achieve not less than the VOC emission reduction initially contemplated by the affected tank project; and (c) indicate that the alternative project will be completed by the same date as the project it replaces unless the Parties agree to an alternative Completion Date for the project. The EPA shall approve or disapprove Defendants' proposal. Any alternative project shall be implemented by Defendants in accordance with the applicable requirements of Appendix A. The Defendants shall use good faith efforts to secure the estimated emission reductions identified for any alternative project. In the event the EPA disapproves Defendants' proposal under this Paragraph, Defendants may invoke dispute resolution in accordance with the provisions of Section X of this Decree (Dispute Resolution).

D.     <u>Other Project Requirements</u>.

22. Defendants shall maintain and produce to the United States all non-privileged documents the EPA requests, within thirty (30) Days of the date of receipt of the request, to substantiate the costs and the estimated emission reductions of the projects described in Paragraphs 19-21.

23. Any public statement referring to projects described in Paragraphs 18-21, above, shall include the following language: "This action was undertaken in connection with the settlement of

an enforcement action, United States v. Marathon Petroleum Corporation, et al., under the Clean Air Act."

24.    Within sixty (60) Days following the completion of all projects described in Paragraphs 19-21, above, Defendants shall submit to the United States a Project Completion Report that documents the: (a) date that each project was completed; (b) performance of the tasks required by Section IV of Appendix A to substantiate the estimated emission reductions identified in Appendix A; (c) cost incurred by the Defendants in implementing each project, and (d) the defect and repair information required by Appendix A.

25.    Defendants shall retain an independent, third-party professional engineer ("PE"), licensed in the state(s) where the tank projects described in Paragraphs 19-21, above, are being performed, to review the Mitigation Projects identified in Paragraphs 19, 20, or 21, above, and Appendix A.  The PE's review of each project shall be submitted to the United States with the Project Completion Report and shall contain a certification by the PE that the geodesic domes, fixed roofs, secondary seals and deck fittings were constructed and installed in accordance with the requirements of Paragraphs 19, 20, or 21, above, and Appendix A.

26.    With regard to each project described in Paragraphs 19-21, above, Defendants shall certify in the Project Completion Report that:

　　　　a.  the cost information Defendants provided to the EPA in connection with each project is complete and accurate;

　　　　b.  the total mass emissions reduction for each project as determined by the TankESP version 3.0.14 program is complete and accurate;

11

    c.  it was not legally obligated by any federal, state, or local law or regulation or grant, or as the result of any judicial or administrative order to install, maintain, or undertake in any way any of the projects;

    d.  other than in settlement of the claims resolved in this Decree, the projects are not an action that Defendants were planning or intending to construct, perform, or implement;

    e.  they have not received and will not receive credit for the projects in any other enforcement action;

    f.  the projects set forth in Paragraphs 19, 20, or 21, above, were completed in accordance with applicable local, state, and federal requirements and permits, including but not limited to all construction approvals; and

    g.  they have not and will not receive any reimbursement for all or some portion of the projects from any unaffiliated third-party "person" (as defined by the Act).

27.    Beginning six (6) months after the Effective Date of this Decree, and continuing until each project described in Paragraphs 19-21, above, is completed in accordance with this Decree, Defendants shall provide the United States with annual updates concerning the progress of meeting the schedule for those projects.

28.    Subject to the conditions of Section XI (Information Collection and Retention of Records), all non-privileged plans and reports prepared by Defendants regarding each project described in Paragraphs 19-21, above, shall be publicly available. Defendants may assert that any part of these plans or reports is protected from disclosure to third parties as confidential business information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants

12

seek to protect as CBI, and the EPA wishes to disclose, the Parties agree that the procedures set forth in 40 C.F.R. Part 2 shall apply to such information.

29.    If any obligation under Paragraphs 19-21, above, requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendants may seek relief under the provisions of Section IX of this Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VII.    REPORTING/COMPLIANCE REQUIREMENTS

30.    The submittals required in Paragraphs 24, 26 and 27, above shall be signed and certified by the Defendants' Senior Vice President of Transportation & Logistics.

31.    The certification required under Paragraph 30 shall include the following statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

32.    All reports and submittals required by this Decree shall be sent to the persons or entities designated in Section XIV of this Decree (Notices).

33.     The reporting requirements of this Decree do not relieve the Defendants of any reporting obligations required by the CAA or its implementing regulations, or any other reporting obligation required by any federal, state, or local law, regulation, permit, or other requirement.

34.     Any information submitted pursuant to this Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

35.     Whenever any violation of this Decree or any other event affecting Defendants' performance under this Decree may pose a threat to the public health or welfare or the environment, Defendants shall notify the EPA orally or by electronic transmission as soon as possible, but no later than twenty-four (24) hours after the Defendants first knew of the violation or event in accordance with Section XIV of this Decree (Notices).

## VIII.   STIPULATED PENALTIES

36.     Defendants shall be liable for stipulated penalties to the United States for violations of this Decree as set forth in this Section unless excused under Section IX (Force Majeure).

37.     If Defendants fail to pay the civil penalty required under Section V of this Decree within the time specified in Section V, during the first fifteen (15) days, Defendants shall pay both Interest (calculated as specified in Paragraph 16 of this Decree) and a stipulated penalty of $1,000 per Day for each Day that Defendants' payment is late.  Beginning sixteen (16) Days after payment is due, Defendants shall pay both Interest (calculated as specified in Paragraph 16 of this Decree) and a stipulated penalty of $3,500 per Day for each Day that Defendants' payment is late.

38.    If Defendants fail to timely comply with any of the requirements to which this Paragraph applies, the following stipulated penalties shall accrue each Day for each violation of the requirement to:

| Period of Noncompliance | Penalty Per Day of Violation |
|---|---|
| 1st through 14th Day | $1,000 |
| 15th through 30th Day | $5,000 |
| 31st Day and beyond | $10,000 |

a. install the Mitigation Projects described in Section VI of this Decree by the Completion Dates as specified in Sections I, II and III of Appendix A;

b. maintain the integrity of the secondary seals, deck fittings, fixed roof(s), and geodesic domes for the Mitigation Projects identified in Section VI of this Decree and Sections I, II, and III of Appendix A consistent with recognized industry practices, if applicable, and good engineering judgment;

c. perform the tasks to substantiate the emissions reductions of the Mitigation Projects, including scanning, inspecting, and repairing the tanks as specified in Appendix A;

d. notify the EPA of significant issues arising from the installation or maintenance of any Mitigation Project that could adversely impact public health or the environment as specified in Section V of Appendix A and Paragraph 35 of this Decree; and

e. retain an independent, third-party professional engineer to review and certify the projects as specified in Paragraph 25 of this Decree.

15

39.    Other Requirements:  If Defendants fail to timely comply with any of the requirements to which this Paragraph applies, the following stipulated penalties shall accrue each Day for each violation of the requirement to:

| Period of Noncompliance | Penalty Per Day of Violation |
| --- | --- |
| 1st through 30th day | $250 |
| 31st  through 60th day | $500 |
| 61st day and beyond | $1,500 |

a.  submit the information identified in Section I, Paragraphs 1 – 4, Section II Paragraphs 1 – 5, and Section III, Paragraphs 1 – 5, Appendix A;

b.  notify the EPA of any issues that result in a significant delay to the project completion schedules specified in Sections I – III, Appendix A;

c.  maintain and produce documents as specified in Paragraph 22 of this Decree;

d.  submit the Project Completion Report as specified in Paragraph 24 of this Decree; and

e.  submit annual updates as specified in Paragraph 27 of this Decree.

40.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day that the violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Separate stipulated penalties shall accrue simultaneously for separate violations under this Decree. Stipulated penalties shall accrue regardless of whether the United States provides the Defendants notice of the violation(s) of this Decree.

16

41.     Defendants shall pay stipulated penalties within thirty (30) Days of receiving the United States' written demand, unless Defendants invoke Dispute Resolution pursuant to Section X of this Decree.

42.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Decree.

43.     Stipulated penalties shall continue to accrue as provided in Paragraph 40, during Dispute Resolution, but need not be paid until the following:

> a.    If the dispute is resolved by agreement or by a decision of the EPA that is not appealed to the Court, the Defendants shall pay accrued penalties determined to be owed, together with Interest, to the United States within thirty (30) Days of the Effective Date of the agreement or the receipt of the EPA's decision or order.

> b.    If the dispute is appealed to the Court and the United States prevails in whole or in part, the Defendants shall pay accrued penalties related to issues upon which the United States prevails and are determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order except as provided in subparagraph (c) below.

> c.    If any Party appeals the District Court's decision, the Defendants shall pay all accrued penalties determined to be owed, together with Interest, within fifteen (15) Days of receiving the final appellate court decision.

44.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Section V (Civil Penalties), with the

17

transmittal letter stating that the payment is for stipulated penalties and for which violation(s) the penalties are being paid.

45.     If the Defendants fail to pay stipulated penalties according to this Decree, Defendants shall be liable for Interest on such penalties accruing as of the date payment became due.

46.     Stipulated penalties paid pursuant to this Section are penalties within the meaning of Section 162(f) of the Internal Revenue Code, 26 U.S.C. § 162(f), and are not tax deductible expenditures for purposes of federal law.  Nothing in this Paragraph shall be construed to limit or prohibit the United States from seeking any remedy otherwise provided by law for the Defendants' failure to pay any stipulated penalties.

47.     Subject to the provisions in Section XII of this Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violations of this Decree or applicable law.   Where a violation of this Decree is also a violation of the requirements of CAA Section 211, 42 U.S.C.§ 7545, and its implementing regulations, including 40 C.F.R. Part 80, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.     FORCE MAJEURE

48.     "Force Majeure," for the purposes of this Decree, is defined as any event arising from causes beyond the control of Defendants or of any entity controlled by the Defendants, including but not limited to, Defendants' officers, employees, agents, contractors, and consultants, which delays or prevents the performance of any obligation under this Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that the Defendants exercise "best efforts to

18

fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring or (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. Depending upon the circumstances and Defendants' response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure event where the failure of the permitting authority to act is beyond the control of the Defendants and Defendants have taken all steps available to it to obtain the necessary permit, including, but not limited to: submitting a complete and timely permit application; responding to requests for additional information by the permitting authority in a timely fashion; and accepting lawful permit terms and conditions after expeditiously exhausting any legal rights to appeal terms and conditions imposed by the permitting authority. Force Majeure does not include the Defendants' financial inability to perform any obligation under this Decree.

49.     If any event occurs or has occurred that may delay the performance of, or otherwise cause a violation of, any obligation under this Decree, whether or not caused by a Force Majeure event, Defendants, within fourteen (14) business days of the event causing the delay, shall, in accordance with Section XIV (Notices), provide in writing to the EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Defendants, such event may cause or contribute to an endangerment of public health, welfare or the environment. Defendants shall include with the

19

notice all available documentation supporting the claim that the delay was attributable to a Force Majeure event. Failure to comply with the above requirements shall preclude the Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstances of which Defendants, any entity controlled by the Defendants, or Defendants' contractors knew or should have known.

50.    If the EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of obligations under this Decree that are affected by the Force Majeure event will be extended by the EPA for such time as is necessary to complete those obligations. An extension of time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance under any other obligation. The EPA will notify the Defendants of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

51.    If the EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, the EPA will notify the Defendants in writing of its decision.

52.    If the Defendants elect to invoke the dispute resolution procedures set forth in Section X of this Decree, it shall do so no later than fifteen (15) business days after receipt of the EPA's notice. In any such proceeding, the Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay was caused or will be caused by a Force Majeure event; that the delay or anticipated delay or the extension sought was or will be warranted under the circumstances and that best efforts were taken or will be taken to avoid and mitigate the effects of the delay; and that the Defendants complied with the requirements of

20

Paragraphs 48 and 49 above.  If the Defendants carry this burden, the delay at issue shall be deemed not to be a violation by the Defendants of the affected obligation of this Decree identified to the EPA and the Court.

## X.  DISPUTE RESOLUTION

53.    Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude the Defendants from raising such issue as a defense to an action by the United States to enforce any obligation of the Defendants under this Decree.

54.    Informal Dispute Resolution.    Any dispute subject to Dispute Resolution under this Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when one Party sends to the other a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of dispute shall not exceed twenty (20) business days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures set forth below.

55.    Formal Dispute Resolution.    Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

56. The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, all factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

57. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Decree.

58. The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

59. Standard of Review. Except as otherwise provided in this Decree, in any dispute brought under Paragraph 57 of this Decree (Formal Dispute Resolution), Defendants shall bear the burden of demonstrating that its position complies with this Decree and the CAA and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue

22

that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and Defendants reserve the right to argue to the contrary.

60.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendants under this Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 43. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION OF RECORDS

61.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Decree, at a reasonable time, upon presentation of credentials, to:

  a.  monitor the progress of activities required under this Decree;

  b.  verify any information or data submitted to the United States in accordance with the terms of this Decree;

  c.  obtain documentary evidence, including photographs and similar data; or

  d.  assess the Defendants' compliance with this Decree.

62.    Until two (2) years after the termination of this Decree, Defendants shall preserve and retain, and shall instruct its contractors and agents to preserve and retain, all records, documents, or other information (including documents, records, or other information in electronic form) now

in its or its contractors' or agents' possession or control, or which come into its or its contractors' or agents' possession or control, that relate to the Defendants' performance of the requirements of this Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any non-privileged documents, records, or other non-privileged information required to be maintained under this Paragraph. The records retention requirement imposed under this Decree does not affect, modify or excuse Defendants from compliance with any other records retention requirements imposed by federal, state or local laws or regulations.

63. At the conclusion of the document retention period identified in Paragraph 62, Defendants may destroy such documents, records, or other information. However, upon request by the United States, Defendants shall deliver any such non-privileged documents, records, or other information to the United States. If Defendants assert that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law, it shall provide the United States with the following: (i) the title of the document, record, or information; (ii) the date of the document, record, or information; (iii) the name and title of the author of the document, record, or information; (iv) the name and title of each addressee and recipient; (v) a description of the subject of the document, record, or information; and (vi) the privilege asserted. However, no documents, records, or other information created or generated pursuant to the requirements of this or any other Decree with the United States shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a portion of documents, records, or other information, the documents,

records, or other information shall be provided to the United States in redacted form to mask the privileged information only. Defendants shall retain all documents, records, or other information that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim before this Court and any such dispute has been resolved in Defendant's favor. Absent a dispute over a claim of privilege, nothing in this Paragraph shall operate to extend the document retention period set forth in Paragraph 62 above.

64.     Defendants may assert that information required to be provided under this Consent Decree is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

65.     This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

66.     This Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action to the Date of Lodging of this Decree.

67.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Decree.

68.     This Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA or its implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 66.

69.     The United States reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any of the Defendants' facilities, whether related to the violations addressed in this Decree or otherwise.

70.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Defendants' alleged violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 66.

71.     This Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining compliance with all applicable federal, state, and local laws, regulations, and permits and Defendants' compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, state, or local laws, regulations, or permits.

72.     This Decree does not limit or affect the rights of Defendants or of the United States against any third parties not party to this Decree nor does it limit the rights of third parties not party to this Decree against Defendants except as otherwise provided by law.

73.     This Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XIII.     COSTS

74.     The Parties shall bear their own costs of this action, including attorneys' fees except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the Defendants.

## XIV.     NOTICES

75.     Unless   otherwise   provided   herein,   whenever   notifications,   submissions,   or communications are required by this Decree, they shall be made in writing addressed as follows:

> To the United States:
>
>> Chief, Environmental Enforcement Section
>> Environment and Natural Resources Division
>> U.S. Department of Justice
>> PO Box 7611
>> Washington, D.C. 20044-7611
>> Ref: 90-5-2-1-11030
>
> To the EPA:
>
>> Director
>> Air Enforcement Division
>> Office of Enforcement and Compliance Assurance
>> U.S. Environmental Protection Agency
>> 1200 Pennsylvania Avenue, N.W. Mail Code 2422A
>> Washington, D.C. 20460
>
>> Natalie Firestine
>> Attorney-Advisor
>> Air Enforcement Division
>> Office of Enforcement and Compliance Assurance
>> U.S. Environmental Protection Agency
>> 1595 Wynkoop Street (8MSU)
>> Denver, Colorado 80202
>> Telephone: (303) 312-7165

Telefax: (303) 312-6003
Email: firestine.natalie@epa.gov

To Defendants:

Virginia M. King
Assistant Group Counsel
Marathon Petroleum Company LP
539 South Main Street
Findlay, OH 45840
Telephone: (419) 421-3370

W. Greg Moore
Compliance Manager
Marathon Petroleum Company LP
539 S. Main Street
Findlay, OH  45840

Timothy Aydt
Terminal Transport & Rail General Manager
Marathon Petroleum Company LP
539 S. Main Street
Findlay, OH  45480

76.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

77.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, including electronic mail, unless otherwise provided by this Decree or by mutual agreement of the Parties in writing.

## XV.     EFFECTIVE DATE

78.     The Effective Date of this Decree shall be the date upon which this Decree is entered by the Court or a motion to enter the Decree is granted, whichever is first, as recorded by the Court's docket.

28

## XVI.    RETENTION OF JURISDICTION

79.    The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of resolving disputes under this Decree or entering orders modifying this Decree, pursuant to Section X (Dispute Resolution) and Section XVII (Modification), or by effectuating or enforcing compliance with the terms of this Decree.

## XVII.    MODIFICATION

80.    The terms of this Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

81.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided in Paragraph 59, the Party seeking the modification bears the burden of demonstrating that it is entitled to the modification in accordance with the Fed. R Civ. P. 60(b).

## XVIII.    TERMINATION

82.    If the Defendants have satisfactorily completed their obligations under this Decree, including the payment of the civil penalty under Section V of this Decree, completion of the requirements of Section VI of this Decree (Mitigation Projects), and the payment of any outstanding stipulated penalties under Section VIII of this Decree, then, two (2) years after submission of the Project Completion Report required by Paragraph 24 of this Decree, Defendants may serve upon the United States a Request for Termination.  The Request for Termination shall include, at a minimum, a detailed statement describing the basis(es) for Defendants' determination that it has satisfied the requirements described above, all necessary

29

supporting documentation for that statement, and a proposed "Joint Stipulation and Motion to Terminate the Decree."

83.    If the United States agrees that Defendants have satisfactorily complied with the requirement for termination of this Decree, then the Parties shall file with the Court a "Joint Stipulation and Motion to Terminate the Decree" reciting that the requirements of the Decree have been met and requesting that the Court terminate this Decree.

84.    If the United States does not agree that Defendants have satisfactorily complied with the requirements for termination of this Decree, it shall so notify Defendants in writing which requirements for termination it has determined are not satisfied and the basis for its determination.  In such a case, Defendants may take additional actions to satisfy the requirements for termination which the United States has determined have not been satisfied and then submit a revised Request for Termination.

85.    If the United States does not agree that the Decree may be terminated, or if Defendants do not receive a response from the United States within sixty (60) Days of Defendants' submission of the Request for Termination, Defendants may invoke dispute resolution under Section X of this Decree (Dispute Resolution). Defendants, however, shall not invoke dispute under this Section until at least 60 days after service of Defendants' Request for Termination.

## XIX.    PUBLIC PARTICIPATION

86.    This Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate.

30

Defendants consent to the entry of this Decree without further notice and agree not to withdraw from, or oppose entry of, this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

87.    The undersigned representative of the Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

88.    This Decree may be signed by counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that Defendants need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Decree.

## XXI.  INTEGRATION

89.    This Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and Appendix A, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.   No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

31

## XXII.    FINAL JUDGMENT

90.    Upon approval and entry of this Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and the Defendants.

## XXIII.    APPENDICES

91.    The following appendix is attached to and part of this Decree: "Appendix A, Mitigation Projects.

JUDMGENT IS HEREBY ENTERED IN ACCORDANCE WITH THIS CONSENT DECREE THIS _____ DAY OF _____, 2015.

_____

UNITED STATES DISTRICT COURT JUDGE
District of Ohio

32

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Marathon Petroleum Corporation, et al.

**FOR THE UNITED STATES OF AMERICA:**

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

By:     s/ John N. Moscato
        JOHN N. MOSCATO
        Senior Counsel
        Environment and Natural Resources Division
        Environmental Enforcement Section
        United States Department of Justice
        999 18th Street, South Terrace - Suite 370
        Denver, CO 80202
        Email:  john.moscato@usdoj.gov
        Telephone: (303) 844-1380
        Facsimile:  (303) 844-1350


        STEVEN M. DETTELBACH
        United States Attorney


By:     s/Steven J. Paffilas
        STEVEN J. PAFFILAS (0037376)
        Assistant United States Attorney
        Northern District of Ohio
        801 W. Superior Avenue
        Suite 400
        Cleveland, Ohio 44113
        Phone: (216) 622-3698
        Fax: (216) 522-4982
        steven.paffilas@usdoj.gov

33

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Marathon Petroleum Corporation, et al.

**FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:**

5/12/15

Date

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

5/11/15

Date

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

5/5/2015

Date

PHILLIP A. BROOKS
Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2422A
Washington, D.C. 20406

33

_4/17/15_

Date

NATALIE FIRESTINE
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, CO 80202

34

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of <u>United States v. Marathon Petroleum Corporation, et al</u>.

**FOR DEFENDANT MARATHON PETROLEUM COMPANY LP:**

BY:  MPC INVESTMENT LLC, its GENERAL PARTNER

BY: _____

4/17/15
Date

GARY HEMINGER

TITLE:  PRESIDENT

**FOR DEFENDANT MARATHON PETROLEUM CORPORATION**

BY:  MARATHON PETROLEUM CORPORATION

BY: _____

4/17/15
Date

GARY HEMINGER

TITLE:  PRESIDENT

35

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Civil Action No. _____

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

MARATHON PETROLEUM CORPORATION,

and

MARATHON PETROLEUM COMPANY LP,

       Defendants.

## <u>CONSENT DECREE</u>

### APPENDIX A

### MITIGATION PROJECTS

1

# SECTION I - REQUIREMENTS FOR PROJECTS INVOLVING INSTALLATION OF A GEODESIC DOME

Defendant shall install and maintain a geodesic dome on the tanks identified in Section VI.B of the Decree and Table A-1 (subject to such change as may be permitted under Section VI.C of the Decree). The geodesic domes, as installed, shall be designed to reduce volatile organic compounds (VOCs) emissions from the tanks identified below to achieve the estimated emissions reductions identified in Table A-1 below (as determined by the TankESP version 3.0.14 program).

| Tank ID | Location (Address) | Commodity | Est. VOC Emission Reductions (tons/yr.) | Est. Cost | Completion Date |
|---------|--------------------|-----------|-----------------------------------------|-----------|-----------------|
| | **Table A-1: Geodesic Dome Projects** | | | | |
| Tank 120-4 | Griffith, IN Light Products Terminal | Gasoline | 3.09 | $330,000 | 5/1/2016 |
| | 1900 West Ave H | | | | |
| | Griffith, IN 46319 | | | | |
| Tank 120-6 | Griffith, IN Light Products Terminal | Gasoline | 1.94 | $330,000 | 5/1/2016 |
| | 1900 West Ave H | | | | |
| | Griffith, IN 46319 | | | | |
| Tank 80-12 | Griffith, IN Light Products Terminal | Gasoline | 1.06 | $210,000 | 5/1/2016 |
| | 1900 West Ave H | | | | |
| | Griffith, IN 46319 | | | | |
| Tank 80-5 | Griffith, IN Light Products Terminal | Gasoline | 5.04 | $230,000 | 5/1/2016 |
| | 1900 West Ave H | | | | |
| | Griffith, IN 46319 | | | | |
| Tank 80-9 | Griffith, IN Light Products Terminal | Gasoline | 1.62 | $230,000 | 5/1/2016 |
| | 1900 West Ave H | | | | |
| | Griffith, IN 46319 | | | | |
| Tank 1217 | Lima, OH Crude Tank Farm | Crude | 5.16 | $379,000 | 12/31/2015 |
| | 575 Buckeye Rd. | | | | |
| | Lima, OH 45804 | | | | |
| Tank 1218 | Lima, OH Crude Tank Farm | Crude | 2.80 | $379,000 | 12/31/2015 |
| | 575 Buckeye Rd. | | | | |
| | Lima, OH 45804 | | | | |

2

The geodesic domes shall be installed by the "Completion Date" stated in Table A-1. Within 60 Days of the Effective Date of the Decree, and in accordance with the proposed schedule for the installation of the geodesic domes identified in Table A-1, Defendants shall submit:

1. a list and description of the project activities for each dome to be installed which, at a minimum, must include tank inspections (or scans) and dome installation, projected maintenance, and the anticipated date of commencement of any tank inspections (or scans);

2. a statement that Defendants do not anticipate that the installation of geodesic domes identified in Table A-1 will have an impact on gasoline supplies;

3. for each tank upon which Defendants install a dome, a description of the tank rim seal(s) and a copy of the most recent visual inspection reports prepared under 40 C.F.R. Parts 60, 61 or 63, if applicable; and

4. a copy of the "Summary of Inspection," "Field Report, Floating Roof," and the "Recommended Repair Checklist" sections, or similar sections if available, from the most recent engineering inspection report on the tanks conducted per API Standard 653, "Tank Inspection and Repair, Alteration, and Reconstruction."

The installation Completion Date in Table A-1 is enforceable as part of this Decree. Defendant shall promptly inform the United States, in accordance with Section XIV of the Decree (Notices), if they encounter any issues that result in a significant delay to any Completion Date in Table A-1. The notification shall be provided to the EPA no later than 14 business days after Defendants reasonably determine that there will be a significant delay, and must include a statement of how Defendants intend to address each issue and proceed with the installation, including a revised completion date, which is subject to review and approval by the EPA.

## SECTION II - REQUIREMENTS FOR PROJECTS INVOLVING INSTALLATION OF A SECONDARY SEAL AND DECK FITTING

Defendants shall install and maintain secondary seals and deck fittings on the tanks identified in Section VI.B of the Decree and Table A-2 (subject to such change as may be permitted under Section VI.C of the Decree).  The secondary seals and deck fittings, as installed, shall be designed to reduce VOC emissions from the tanks identified below to achieve the estimated emission reductions identified in Table A-2 below (as determined by the TankESP version 3.0.14 program).

3

| | | | Est. VOC Emission Reductions (tons/yr.) | | |
|---|---|---|---|---|---|
| **Tank ID** | **Location (Address)** | **Commodity** | | **Est. Cost** | **Completion Date** |
| Tank 80-8 | Hammond, IN Light Products Terminal | Gasoline | 2.50 | $105,504 | 5/1/2016 |
| | 4206 Columbia Ave | | | | |
| | Hammond, IN 46327 | | | | |
| Tank 80-15 | Hammond, IN Light Products Terminal | Gasoline | 2.45 | $103,620 | 5/1/2016 |
| | 4206 Columbia Ave | | | | |
| | Hammond, IN 46327 | | | | |
| Tank 162 | Louisville, KY-Algonquin Light Products Terminal | Gasoline | 2.70 | $113,040 | 12/31/2016 |
| | 4510 Algonquin Parkway | | | | |
| | Louisville, KY 40211 | | | | |
| Tank 80-9 (T009) | Columbus, OH Light Products Terminal | Gasoline | 2.62 | $113,620 | 12/31/2016 |
| | 4125 Fisher Road | | | | |
| | Columbus, OH 43228 | | | | |
| Tank 80-8 (T005) | Lima, OH Light Products Terminal | Gasoline | 2.57 | $110,620 | 12/31/2016 |
| | 2990 South Dixie Hwy | | | | |
| | Lima, OH 45804 | | | | |
| Tank 80-14 | Speedway, IN Light Products Terminal | Gasoline | 2.55 | $105,620 | 12/31/2016 |
| | 1304 Olin Ave | | | | |
| | Indianapolis, IN 46327 | | | | |
| Tank 80-6 | Hammond, IN Light Products Terminal | Gasoline | 2.32 | $104,620 | 12/31/2016 |
| | 4206 Columbia Ave | | | | |
| | Hammond, IN 46327 | | | | |

**Table A-2:  Secondary Seals and Deck Fittings Projects**

The secondary seals and deck fittings shall be installed by the Completion Date set forth in Table A-2. Within 60 Days of the Effective Date of the Decree, and in accordance with the proposed schedule for the installation of the secondary seals and deck fittings identified in Table A-2, Defendants shall submit:

1. a list and description of the project activities for each of the secondary seals and deck fittings to be installed which, at a minimum, must include tank cleaning, if necessary, for the installation of each of the secondary seals and deck fittings, tank inspections (or scans) and secondary seal and deck fitting installation, projected maintenance, and the anticipated date of commencement of any tank inspections (or scans);

4

\\DC - 042666/000001 - 6418117 v1

2. a statement that Defendants do not anticipate that the installation of the secondary seals and deck fittings identified in Table A-2 will have an impact on gasoline supplies;

3. the specifications of the secondary seals and deck fittings to be installed;

4. for each tank upon which Defendants install a secondary seal and deck fitting, a description of the tank rim seal(s) and a copy of the most recent visual inspection reports prepared under 40 C.F.R. Parts 60, 61 or 63, if applicable; and

5. a copy of the "Summary of Inspection," "Field Report, Floating Roof," and the "Recommended Repair Checklist" sections, or similar sections if available, from the most recent engineering inspection report on the tanks conducted per API Standard 653, "Tank Inspection and Repair, Alteration, and Reconstruction."

The installation Completion Date in Table A-2 is enforceable as part of this Decree. Defendants shall promptly inform the United States, in accordance with Section XIV of the Decree (Notices), if it encounters any issues that result in a significant delay to any Completion Date in Table A-1. The notification shall be provided to the EPA no later than 14 business days after Defendants reasonably determine that there will be a significant delay, and must include a statement of how Defendants intend to address each issue and proceed with the installation, including a revised completion date, which is subject to review and approval by the EPA.

## SECTION III - REQUIREMENTS FOR PROJECTS INVOLVING INSTALLATION OF A FIXED ROOF

Defendants may install and maintain fixed roofs on tanks subject to such change as may be permitted under Section VI.C of the Decree ("Alternative Projects"). The fixed roofs, as installed, shall be designed to reduce VOC emissions from the tanks identified by Defendants to achieve the estimated emission reductions as determined by the TankESP version 3.0.14 program.

Within 60 Days of the EPA's approval of the change as permitted under Section VI.C of the Decree, Defendants shall submit:

1. a list and description of the project activities for each fixed roof to be installed which, at a minimum, must include tank cleaning, if necessary, for the installation of each fixed roof, activities associated with taking the tank out of service in order to install the fixed roof, tank inspection (or scan) and fixed roof installation, projected maintenance; the anticipated date of commencement of any tank inspections (or

5

scan), a proposed schedule for the project activities for each fixed roof to be installed, and a project completion date;

2.  a statement that Defendants do not anticipate that the installation of the fixed roofs identified will have an impact on gasoline supplies;

3.  the specifications of the fixed roofs to be installed;

4.  for each tank upon which Defendants install a fixed roof, a description of the tank rim seal(s) and a copy of the most recent visual inspection reports prepared under 40 C.F.R. Parts 60, 61 or 63, if applicable; and

5.  a copy of the "Summary of Inspection," "Field Report, Floating Roof," and the "Recommended Repair Checklist" sections, or similar sections if available,  from the most recent engineering inspection report on the tanks conducted per API Standard 653, "Tank Inspection and Repair, Alteration, and Reconstruction."

The project completion schedule is enforceable as part of this Decree.  Defendants shall promptly inform the United States, in accordance with Section XIV of the Decree (Notices), if it encounters any issues that result in a significant delay to the project completion schedule.  The notification shall be provided to the EPA no later than 14 business days after Defendants reasonably determine that there will be a significant delay, and must include a statement of how Defendants intend to address each issue and proceed with the installation, including a revised completion date, which is subject to review and approval by the EPA.

## SECTION IV - SUBSTANTIATION OF EMISSIONS REDUCTIONS

In order to substantiate the emissions reductions from the tank projects identified in Section VI.B or Section VI.C of the Decree as set forth in this Appendix A, Defendants shall:

1. For any tank projects listed in Appendix A, Table A-1 or Table A-2, or for any alternative project, whereby emissions controls are installed "in-service", excluding the tank projects listed in Appendix A, Section IV, Paragraph 3, the following requirements apply:

   a. Defendants shall conduct a scan using a gas-imaging camera to determine if there are any significant gaseous emissions in accordance with the following requirements:

      i. Defendants shall notify the EPA pursuant to Section XIV of the Decree (Notices) 14 Days before the gas-imaging camera scan(s) is to commence;
      ii. Using the gas-imaging camera from the top platform, Defendants shall scan the entire rim seal and all roof appurtenances of the tank(s).  The gas-imaging camera scan must be recorded; and
      iii. During the gas-imaging camera scan(s) for each tank, Defendants shall identify each location(s) of any significant gaseous emissions, and record such location(s).

   b. Prior to the installation of any tank project(s) identified above, and after the gas-imaging scan(s) is conducted, Defendants shall evaluate the tank(s) condition by conducting an inspection(s), in accordance with the following requirements:

      i. Visually inspect the tank's fittings;

      ii. Visually inspect the tank's primary seals;

      iii. Visually inspect the tank's secondary seals;

      iv. Measure the primary and secondary seal gaps of the tank; and

      v. Visually inspect the locations of significant gaseous emissions identified in Appendix A, Section IV, Paragraph 1(a) that can be safely accessed while the tank is in service.

   c. If Defendants identify locations where significant gaseous emissions are present during the gas-imaging scan conducted at Appendix A, Section IV, Paragraph 1(a), or during the inspection at Appendix A, Section IV, Paragraph 1(b), Defendants shall repair the source of the leaks before the installation of the tank projects, and Defendants shall:

7

      i.  Repair fabric seals fabric as needed consistent with recognized industry practices and good engineering judgment;

     ii.  Repair any other identified defects that can be safely conducted without delay of repair using recognized industry practices and good engineering judgment; and

   iii.  If the defects cannot be repaired, the tank shall be put on a repair schedule.

d.  Defendants shall include in the Project Completion Report required under Paragraph 24 of the Decree:

      i.  all emission defects discovered;

     ii.  describe any necessary repair;

   iii.  date of completion of repair (where applicable);

   iv.  describe the rationale based on good engineering judgment for any necessary delay of repair; and

    v.  a repair schedule (where applicable).

2. For any Appendix A, Table A-1 and Table A-2 tanks, or for any alternative project, whereby emissions controls are installed "out-of-service", excluding tanks listed in Appendix A, Section IV, Paragraph 3, the following requirements apply:

a.  Defendants shall conduct a scan using a gas-imaging camera to determine if there are any significant gaseous emissions present in accordance with the following requirements:

      i.  Defendants shall notify the EPA pursuant to Section XIV of the Decree (Notices) 14 Days before the gas-imaging camera scan(s) is to commence, except for external floating roof (EFR) tank 80-12 (Table A-1);

     ii.  For internal floating roof (IFR) tanks, while liquid is in the tank, conduct the gas-imaging camera scan(s) at the plane of the roof hatch. The gas-imaging camera scan(s) must be recorded;

   iii.  For EFR tanks, when liquid is in the tank(s), conduct the gas-imaging camera scan of the roof from the ladder platform. The gas-imaging camera scan(s) must be recorded; and

   iv.  During the gas-imaging camera scan(s), Defendants shall identify location(s) of any significant gaseous emissions, and record such location(s).

8

    b. Prior to the installation of any tank project, and after the gas-imaging scan(s) is conducted, Defendants shall evaluate the tank(s) condition by conducting an inspection, in accordance with the following requirements:

        i. Visually inspect the locations of significant gaseous emissions identified in 2(a); and

        ii. Conduct the API-653 inspection for the tank(s).

    c. If Defendants identify locations where significant gaseous emissions are present during the gas-imaging scan conducted at Appendix A, Section IV, Paragraph 2(a), or during the inspection at Appendix A, Section IV, Paragraph 2(b), Defendants shall repair the tank(s) consistent with good engineering judgment, and in accordance with the requirements of the API-653 inspection.

    d. Defendants shall include in the Project Completion Report required under Paragraph 24 of the Decree:

        i. all emission defects discovered;

        ii. describe any necessary repairs; and

        iii. date of completion of repair (where applicable).

3. For EFR Tanks 80-5, 80-9 (Table A-1) and IFR Tank 80-9 (Table A-2):

    a. After the tank project(s) is complete and the tank(s) is returned to service, the Defendants shall conduct a scan using a gas-imaging camera to determine if there are any significant gaseous emissions present in accordance with the following requirements:

        i. Defendant shall notify the EPA pursuant to Section XIV of the Decree (Notices) 14 Days before the gas-imaging camera scan(s) is to commence;

        ii. Using the gas-imaging camera from grade, the Defendants shall scan the perimeter vents or joint between the geodesic dome and the top of the tank(s), as applicable, using sound engineering judgment.  The gas-imaging camera scan(s) must be recorded; and

        iii. During the gas-imaging camera scan(s), Defendants shall identify location(s) of any significant gaseous emissions, and record such location(s).

    b. If significant gaseous emissions are identified under Appendix A, Section IV, Paragraph 3(a), the Defendants shall perform a visual inspection from the fixed

9

roof hatch to identify potential defects, including, but not limited to liquid on the floating roof, open vacuum breakers or other visible defects;

c.  If Defendants identify locations where significant gaseous emissions are present during the gas-imaging scan(s) conducted at Appendix A, Section IV, Paragraph 3(a), or during the inspection at Appendix A, Section IV, Paragraph 3(b), Defendants shall repair the tank(s) consistent with recognized industry practices, if applicable, and good engineering judgment; and

d.  Defendants shall include in the Project Completion Report required under Paragraph 24 of the Decree:

    i.  any significant emissions;

    ii.  describe any necessary repairs;

    iii.  date of completion of repair (if repair needed);

    iv.  ambient temperature;

    v.  tank temperature;

    vi.  sky condition (i.e., sunny, partly cloudy); and

    vii.  describe the rationale for any necessary delay of repair based on sound engineering judgment.

## SECTION V – NOTICE OF ADVERSE IMPACT

Defendants shall promptly notify EPA pursuant to Section XIV of the Decree (Notices), if it encounters any significant issues with the installation or maintenance of any geodesic dome, fixed roof, rim seal or deck fitting required under the Decree and Appendix A, Section IV, Paragraphs 1-3 that could adversely impact public health or the environment.  The notification shall be provided to the EPA promptly after Defendants first learn of the problem, and shall include a statement of how Defendants intends to address each problem.

10